286 So.2d 353 (1973)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
Arthur B. CROW et ux.
No. 53436.
Supreme Court of Louisiana.
December 3, 1973.
*354 Adrian G. Duplantier, Charles J. Rivet, New Orleans, for defendants-appellants.
Donald Garrett, James C. Downs, Alexandria, Julian J. Rodrigue, Rodrigue & Pierson, William J. Jones, Jr., Barranger, Barranger, Jones & Fussell, Covington, Camille A. Cutrone, Farris, Ellis, Cutrone, Gilmore & Lautenschlaeger, Charles A. Snyder, Milling, Saal, Benson, Woodward & Hillyer, New Orleans, Robert Neblett, Neblett, Fuhrer & Broussard, Alexandria, amicus curiae for defendant landowner.
D. Ross Banister, Jesse S. Moore, Jr., William W. Irwin, Jr., Johnie E. Branch, Jr., John H. Helm, Dept. of Highways, Baton Rouge, for plaintiff-respondent.
SANDERS, Chief Justice.
Pursuant to the quick-taking statute, LSA-R.S. 48:441, et seq., the Department of Highways expropriated four parcels of land from the Crow holdings in Slidell, Louisiana. Concomitant with the taking, the State deposited $135,425.00 in the registry of the court as compensation for the land and buildings taken and for severance damage to parts of the properties not taken.
Of the four parcels, the valuations of two were stipulated. The valuations of parcels 1-3 and 1-4 were placed at issue at trial. The trial court, after a hearing on the merits, rendered judgment fixing compensation for the property rights expropriated at the sum of $172,969.85 and granting *355 severance damages in the amount of $10,117.10. The award totaled $183,086.95, subject to a credit for the $135,425.00 already withdrawn by the Crows from the registry of the court. The trial court, in reaching this award, evaluated the land and buildings taken by the so-called "income method."
The Court of Appeal for the First Circuit rejected the income method of valuation and reduced the compensation to the $135,425.00 already deposited plus $9,754.00, representing the additional compensation stipulated by the parties as due for the two parcels which were not at issue. 273 So.2d 721. In reducing the award, the Court of Appeal essentially held that, whenever sales figures of comparable tracts exist, valuations predicated upon the capitalization of income must, as a matter of law, be disregarded. We granted certiorari, 277 So.2d 441 (La.1973), primarily to review this rigid approach to valuation. We now reject the holding of the Court of Appeal.

THE LAND
The State expropriated these lands to extend U.S. Highway 190 eastward through the Town of Slidell. Originally, this highway had ended when, coming into the town from the west, it intersected U.S. Highway 11, a north-south artery. The result was a "T" intersection.
The land parcels at issue were on the eastern side of the intersection as shown on the rough diagram. The State's purpose was to extend U.S. Highway 190 to an intersection with I10, a major expressway. The line of taking created tracts 1-3 and 1-4 as roughly indicated by the dotted lines on the diagram below.

Tract 1-3, as the diagram reflects, is triangular and contains 4,920 square feet. On it was a Texaco service station, under lease to a third party. The gross rental amounted to more than $6000.00 per year. Most of the service station was taken in the expropriation. The remainder of the tract, about 1.164 acres, has access to both *356 U.S. Highway 11 and the easterly continuation of U.S. Highway 190, upon which the defendants have constructed a new Texaco station.
Parcel 1-4, prior to the taking, was the location of the Fontainebleau Motel. A new motel, with the same name, has been erected on the southern remainder.

EVALUATIONS
Article I, Section 2 of the Louisiana Constitution provides:
"No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid."
In compliance with the constitutional mandate, this Court has long held that a landowner is entitled to the monetary equivalent of the property taken, or the market value. Housing Authority of New Orleans v. Brinkmann, 224 La. 262, 69 So. 2d 37 (1953); Housing Authority of Shreveport v. Green, 200 La. 463, 8 So.2d 295 (1942); Dakin and Klein, Eminent Domain in Louisiana, Chapter IV, Section 1, p. 154 (1970).
All of the tools of evaluation, including the determination of highest and best use, the study of comparables, cost of structure and depreciation studies, and income analysis, are only means to fixing just and adequate compensation. No one of these tools is an end in itself.
It is true that, in the usual case, the study of comparables is the primary tool of analysis. This Court recognized that principle in State v. Tolmas, 238 La. 1, 113 So.2d 288 (1959). In that decision, however, we further noted:
"Plaintiff's evidence of comparable sales is not conclusive; neither is defendants' testimony as to one comparable sale. The determination of the market value of the instant property cannot, therefore, be limited to only a consideration of comparable sales."
What this means seems clear. If there is a priority attached to the study of comparables, it exists only because, in most cases, that approach is most likely to produce accurate results, insuring just and adequate compensation. When, however, the study of comparables does not, as a matter of fact, serve to best insure an accurate evaluation, the prime consideration of just and adequate compensation requires that courts be free to use any other method better suited to a correct assessment of value. Our recent holdings on front-rear evaluations are only another application of this principle. See State of Louisiana, through the Dept. of Highways v. Hoyt, La., 284 So.2d 763 (1973).
Here, the trial court used income analysis for reasons rooted in the facts of the case. These included the dissimilarities of the existing comparables, the inadequacy of the cost figures presented by the state, the use-division of parcel 1-3 which had been made by the landowners, and similar considerations. The Court of Appeal repudiated none of these factors. The reduction in the award was ordered only because of this holding:
"The adoption of the income approach in establishing value may be material in certain cases, but where there have been sales of comparable property, and improvements can be evaluated accurately by cost of reproduction new less depreciation, valuations arrived at by capitalization of rental value should be disregarded."
The holding is incompatible with the principle of just compensation and must be rejected. We hold, therefore, that, even when comparable sales are available, courts are free to consider income studies if, on the facts of the case, these *357 studies provide a substantial aid in evaluation. Our holding approves a similar decision of the First Circuit Court of Appeal in State v. Lewis, La.App., 142 So.2d 652 (1962). There, the Court of Appeal stated:
"The jurisprudence of this State recognizes that the best measure of compensation or market value is obtained through the use of comparable sales. However, in the absence of such comparable sales, a valuation based upon rental income from the property may be resorted to, and further, even where there are comparable sales, utilization of the rental income may be resorted to for the purpose of supplementing the appraisal. ..." (Italics ours)

SEVERANCE DAMAGES
The Court of Appeal also disallowed severance damages because the parcels remaining after the taking were enhanced by frontage on the new leg of U.S. Highway 190. Such an enhancement is, of course, relevant to severance damages only insofar as it constitutes a special benefit to the particular land. See City of New Orleans v. Giraud, 238 La. 278, 115 So.2d 349 (1959); Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654 (1941); Louisiana Highway Commission v. Hoell, 174 La. 302, 140 So. 485 (1932).
The burden of proof is upon the expropriating authority to establish special benefits. City of New Orleans v. Giraud, supra; State, Dept. of Hwys. v. Menefee, La.App., 266 So.2d 226 (1972); State, Dept. of Hwys. v. Mayer, La.App., 257 So.2d 723 (1972); State, Dept. of Hwys. v. Marks, La.App., 188 So.2d 653 (1966); Tate, Legal Criteria of Damages and BenefitsThe Measurement of Taking-Caused Damages to Untaken Property, 31 La.L. Rev. 431, 447 (1971).
In 31 La.L.Rev. 447, Justice Tate summarizes the jurisprudence on this point as follows:
"Once severance damages have been proved, however, the burden shifts to the taker to prove both the existence and the quantum of any special benefit received by the property which is available as an offset. This is true both in highway `quick-takings' and in general expropriation cases. In the absence of affirmative proof of the amount of special benefits, the claim to such an offset against severance damages will be dismissed."
Here, the State made no affirmative showing of a special benefit. Nor could it have. These tracts were already on the intersection of U.S. Highway 190 and U.S. Highway 11 and already accessible to traffic on both highways. That remains unchanged. Any further benefit from increased traffic or the extension itself would, of course, be realized from the "fulfillment of the public object which justified the taking" and constitute a general benefit to all contiguous landowners.
We conclude that the trial court judgment correctly fixed just and adequate compensation for the property taken and damaged.
For the reasons assigned, the judgment of the Court of Appeal is reversed. The judgment of the trial court is reinstated and made the judgment of this Court.